# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                             No. CR 10-1180 JB

FRANCISCO CUELLAR-VALERIO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sentencing Memorandum for Defendant Francisco Cuellar-Valerio, filed July 20, 2010 (Doc. 21). The Court held a sentencing hearing on August 19, 2010. The primary issues are: (i) whether a criminal history category of III substantially overrepresents Defendant Francisco Cuellar-Valerio's criminal history; (ii) whether the Court should grant Cuellar-Valerio's request for a downward departure based on cultural assimilation; and (iii) whether the Court should vary from the advisory guideline range in fashioning an appropriate sentence for Cuellar-Valerio. Because the Court believes that Cuellar-Valerio's criminal history is substantially overrepresented by the criminal history category to which he has been assigned, the Court will grant his request for a downward departure and depart one criminal history category. Because, however, the facts and circumstances of this case do not justify a further downward departure based on Cuellar-Valerio's cultural assimilation, the Court will deny that request. Because the Court concludes that, after the downward departure for overrepresentation, the punishment set forth in the guidelines is appropriate, the Court will deny Cuellar-Valerio's request for a variance and sentence him to 37 months of incarceration for his illegal re-entry into the United States.

## PROCEDURAL BACKGROUND

On May 26, 2010, Cuellar-Valerio pled guilty to a one-count indictment charging a violation of 8 U.S.C. §§ 1326(a) and (b) -- re-entry of a removed alien. See Non-Standard Fast Track Plea Agreement, filed May 26, 2010 (Doc. 18). The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Cuellar-Valerio on July 12, 2010. In the PSR, the USPO calculated Cuellar-Valerio's offense level to be 21 and his criminal history category to be III, establishing a guideline imprisonment range of 46 to 57 months. Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Court accepts the non-standard fast-track plea agreement, which stipulates to an offense level of 20. An offense level of 20 combined with a criminal history category of III establishes a guideline imprisonment range of 41 to 51 months.

On July 20, 2010, Cuellar-Valerio filed a sentencing memorandum, arguing that there are several factors which moves Cuellar-Valerio outside of the heartland of similar defendants, and which the Court should consider in fashioning his sentence. See Sentencing Memo. at 2. He argues that a downward departure pursuant to U.S.S.G. § 4A1.3 is warranted, because Cuellar-Valerio's criminal history category is significantly overrepresented. See Sentencing Memo. at 2. Specifically, he argues that he received 2 points for a conviction for transporting illegal aliens to work in the fields in Hatch, New Mexico. He received 3 points for a previous illegal reentry conviction. He argues that, although the criminal history points assessed are correctly calculated, his criminal history is more representative of someone who is in criminal history category II. Cuellar-Valerio also argues that he should receive an additional downward departure based on cultural assimilation, because he has lived in the United States since 1985 and received resident alien status in 1988. See Sentencing Memo. at 6. He remained in the United States continuously for over seventeen years until his conviction for transporting illegal aliens in 2002, the revocation of his resident alien status,

and subsequent deportation in 2003. He returned to the United States in 2004 and was again deported after serving his sentence for illegal reentry in 2007. See Sentencing Memo. at 6. Cuellar-Valerio has married and raised a family in the United States, and has lived and worked in Hatch for the majority of his time in the United States. See id. at 7. He argues that the Court should consider that he has engaged in no additional criminal activity after illegally reentering the United States. In addition to the two downward departures, Cuellar-Valerio also moves the Court for a variance based on the § 3553(a) factors, because he has not committed any acts of violence, or been associated with any conspiracies or drug-trafficking crimes, and he is not a threat to the public. See Sentencing Memo. at 10.

In response, the United States argues that the Court should deny Cuellar-Valerio's requests. See United States's Response to Defendant's Sentencing Memorandum, filed August 5, 2010 (Doc. 22). The United States argues that criminal history category III accurately represents Cuellar-Valerio's criminal history and that Cuellar-Valerio's cultural ties are not sufficiently unusual to warrant a downward departure. See id. at 2-3. The United States requests the Court to sentence Cuellar-Valerio within the advisory sentencing guideline range.

## ANALYSIS

The Court believes that Cuellar-Valerio's criminal history is overrepresented and will depart under U.S.S.G. § 4A1.3, categorizing his criminal history as II instead of III. The Court believes, however, that, if Cuellar-Valerio is entitled to further departure from the advisory sentencing guideline range based on cultural assimilation, more illegal reentry defendants would qualify for a departure than those who would not. The exception would swallow the rule. The Court also believes that the applicable guideline sentencing range, after the downward departure to criminal history category II, is appropriate in this case and will deny Cuellar-Valerio a variance from the

guideline sentence.

I.      **CUELLAR-VALERIO'S CRIMINAL HISTORY IS OVERSTATED.**

Cuellar-Valerio argues, pursuant to U.S.S.G. § 4A1.3(b)(1), that his criminal history is overrepresented. He asserts that he is more similar to defendants in criminal history category II, rather than in criminal history category of III. Under U.S.S.G. § 4A1.3, the court may make appropriate adjustments if the criminal history is overstated.

> In deciding whether to depart under section 4A1.3, the district court must specifically address the adequacy of a defendant's criminal history category as it reflects both the defendant's past criminal conduct and likely criminal future. The purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable [G]uideline range where a defendant's criminal history, likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated. In other words, a district court may depart when a defendant's criminal past or likely criminal future removes the defendant from the heartland of the applicable criminal history category.

United States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997), superseded by statute as stated in United States v. Jones, 332 F.3d 1294, 1299 (10th Cir. 2003)(noting that "[t]he amendments contained in the PROTECT Act modify the unitary abuse of discretion standard; the applicable analytical framework, however, remains generally consistent with the four-part test set forth in Collins."). On August 3, 2010, the USPO issued an Addendum to the Presentence Report, in which the USPO recommended that, because Cuellar-Valerio has had no additional arrests in the United States since his 2004 illegal reentry and has never been arrested or convicted of a crime of violence or a crime involving drugs, his criminal history category is more representative of a defendant in criminal history category II. The Court agrees with the assessment of the USPO and finds that Cuellar-Valerio is more similar to defendants in criminal history category II rather than those in criminal history category III. Because the Court determines that Cuellar-Valerio's criminal history is substantially overrepresented, the Court will grant his request for a downward departure. With

an offense level of 20 and a criminal history category of II, the guideline imprisonment range is 37 to 46 months.

## II.     A DEPARTURE BASED ON CULTURAL ASSIMILATION IS NOT WARRANTED.

Cuellar-Valerio requests a downward departure based on cultural assimilation and family ties. Extraordinary circumstances are required to warrant a downward departure based on a defendant's cultural assimilation. See U.S.S.G. § 5K2.0(a)(2)(B)("A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."). The United States Court of Appeals for the Tenth Circuit has also noted that "family responsibilities are a discouraged factor which the district court should consider only in the most extraordinary cases." United States v. Ramirez-Jimenez, 193 Fed. Appx. 811, 816 (10th Cir. 2006)(citing United States v. McClatchey, 316 F.3d 1122, 1130 (10th Cir. 2003)). The Court acknowledges that a departure on those grounds is authorized, see U.S.S.G. 5K2.0, but does not think Cuellar-Valerio's circumstances are exceptional. Many defendants who are similarly situated to Cuellar-Valerio have spent significant portions of their lives in the United States, and have family members in the United States and Mexico.

Cuellar-Valerio urges the Court to apply factors in a proposed amendment to the guidelines, which provide that a downward departure may be appropriate on the basis of cultural assimilation if a defendant meets certain factors, and which the United States Sentencing Commission submitted to Congress on April 30, 2010. See United States Sentencing Commission, Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (April 30, 2010), http://www.ussc.gov/guidelin.htm. The proposed application note 8 for U.S.S.G. § 2L1.2 states:

> 8. Departure Based on Cultural Assimilation. -- There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.
>
> In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

United States Sentencing Commission, Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (April 30, 2010), http://www.ussc.gov/guidelin.htm. If Congress adopts the proposed amendment, it will go into effect in November 2010. The Court, however, must use the guidelines as they currently exist, and not as they may exist in the future. See U.S.S.G. § 1B1.11(a)("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). On the other hand, even if the proposed application note provided factors the Court should consider now when assessing whether a defendant should receive a downward departure based on cultural assimilation, Cuellar-Valerio is not in the unique situation of residing in the United States continuously from childhood that might warrant a downward departure based on cultural assimilation which the proposed amendment to the guidelines envisions. He came to the United States for the first time when he was twenty-eight years old, and the Court does not believe that he has assimilated in the same way that a person who has been in the United States since early

Case 2:10-cr-01180-JB   Document 30   Filed 08/31/10   Page 7 of 10

childhood might assimilate.  Some younger defendants came to the United States as babies or young children by their parents, and are as American as citizens.  Cuellar-Valerio, on the other hand, did not attend school in the United States, and he has significant family ties in Mexico -- his mother and four siblings are in Namiquipa, Chihuahua, Mexico.  See PSR ¶ 29, at 8.  He required an interpreter at the sentencing hearing.  Cuellar-Valerio may have spent a the last twenty-five years of his life in the United States, but he spent the first twenty-seven and all of his childhood in Mexico, and the Court does not believe that he is outside of the heartland of defendants in similar circumstances.  He appears similar to many, if not all, of the defendants the Court sees in the District of New Mexico and that the federal courts along the border and, indeed, courts across the nation see in 2010.  The Court, therefore, will not grant Cuellar-Valerio a further downward departure on this basis.

## III.    A **VARIANCE FROM THE ADVISORY GUIDELINE RANGE OF 37 TO 46 MONTHS IS NOT WARRANTED.**

The Court has carefully considered the guidelines and has considered other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court believes that, after careful consideration of Cuellar-Valerio's criminal history, and the sentences that Cuellar-Valerio has received in the past for illegal re-entry, the punishment set forth in the guidelines is appropriate for this offense.  Cuellar-Valerio committed the crime of transporting illegal aliens in 2001, and was deported after serving an 8-month sentence for that crime.  See PSR ¶ 21, at 5.  When Cuellar-Valerio illegally re-entered the United States in 2004, the Honorable Bruce D. Black, United States District Judge for the District of New Mexico, sentenced Cuellar-Valerio to 37 months

imprisonment.  See PSR ¶ 22, at 6.  As an initial matter, it is difficult to justify a sentence in this case less than what Judge Black gave Cuellar-Valerio in January 2005.  The Court understands the mitigating circumstances of his crime for transporting illegal aliens -- for which he is receiving a severe 16-level enhancement to his offense level -- but Cuellar-Valerio was on full notice after his previous deportation not to return to the United States.  For the Court to vary this time below the guideline range of 37 to 46 months would not fully reflect the seriousness of the offense or promote respect for the law -- both of which are 18 U.S.C. § 3553(a) factors the Court must weigh.  The Court has adjusted for the adverse effect of Cuellar-Valerio's transporting illegal aliens offense in granting a downward departure of his criminal history category, and the Court believes that the resulting guideline range provides just punishment.  The Court is also concerned about adequate deterrence, and a sentence that is less than what Cuellar-Valerio previously received for the same offense would undermine the weight of that factor.  The Court need not overemphasize the protection-of-the-public factor in Cuellar-Valerio's case, given the crimes he has committed, but the Court believes this factor in Cuellar-Valerio's case goes more to where within the guideline range to sentence him rather than whether to grant a variance from the guideline range.  Given Judge Black's 37-month sentence for the same crime at issue in this case, a good case could be made for a sentence higher than the low end of the guideline sentencing range.  In the end, however, the Court finds that a sentence of 37 months fully and effectively reflects each of the factors set forth in 18 U.S.C. § 3553(a).  Moreover, the United States requested a sentence at the low end of the applicable guideline range.

See Transcript of Sentencing Hearing at 7:25-8:2 (taken Aug.19, 2010) (Cairns).[1] While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted) -- this sentence is more reasonable than one within the guidelines. Perhaps most importantly in Cuellar-Valerio's case, the Court believes a sentence of 37 months is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Defendant Francisco Cuellar-Valerio's requests in his Sentencing Memorandum are granted in part and denied in part. Cuellar-Valerio's request for a downward departure to a lower criminal history category based on overrepresentation is granted. The Court denies his requests for an additional downward departure based on cultural assimilation and denies his request for a variance. The Court sentences Defendant Francisco Cuellar-Valerio to a term of 37 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Norman Cairns
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorney for the Defendant*